UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Gurrie Fandozzi,
      Petitioner

      v.                                    Case No. 10-cv-368-SM
                                            Opinion No. 2011 DNH 104
Richard Gerry, Warden,
New Hampshire State
Prison for Men,
      Respondent

**O R D E R**

Respondent moves for summary judgment on Gurrie Fandozzi's petition for a writ of habeas corpus (doc. no. 9). See 28 U.S.C. § 2254. Fandozzi objects (doc. no. 10). The motion is granted, and the petition is denied.

**Factual Background**

Petitioner was charged in state court with twenty-six separate counts of first degree assault upon his six-month old child. (Each count corresponded to a separate broken bone.) A jury returned guilty verdicts on seven of those charges, but acquitted petitioner with respect to the remaining nineteen.

Following petitioner's trial, the prosecutor made a public comment to the effect that she was confused by the verdicts. A juror responded in an email:

> I was Juror #4 on this case. The news media has said you may be a little baffled as to our decision . . . . Do not look at the verdict as anything but a win. Mr. Fandozzi will be going away for many years. I would be very willing to discuss our rationale for the verdict as we were very concerned about the message our verdict may send.

State v. Fandozzi, 159 N.H. 773, 785 (2010).

Under New Hampshire practice, counsel may not contact jurors within thirty days after a verdict is returned. After that period expired, an investigator from the prosecutor's office spoke to the juror and obtained statements that suggested that the guilty verdicts might have been the product of some sort of impermissible jury "compromise," or might not have been based exclusively upon the evidence presented at trial:

> [The juror] said that in the end, they "compromised" and found him guilty of a few of the charges, leaving the other charges on the table in the event [the State] wanted to prosecute the wife. [The juror] then told me that "if he didn't do it, then he's covering up for her and that at least they got one of them."

Id.

The investigator also questioned other jurors, who generally explained that "while some of the jurors believed that the defendant's wife could have caused some of the injuries, they all agreed that only the defendant could have caused the seven injuries for which he was found guilty." Id. at 786. That is,

the jurors looked at each count separately, and found petitioner guilty of those charges that only he could have committed. The jury apparently excluded, and found petitioner not guilty of, any charges involving injuries that the jury thought might have been caused by petitioner's wife. Id.

The investigator's report was made available to the trial judge, who promptly ordered it disclosed to the petitioner. After reviewing the report, petitioner's trial defense counsel filed a motion to set aside the guilty verdicts on grounds of juror misconduct, whereupon the trial judge reconvened the jury and interviewed each juror on the record.

The trial judge asked each juror whether the jury had followed the court's instructions on the law; whether the verdict was based exclusively on the evidence presented at trial, and the law; whether the jury unanimously agreed that petitioner was guilty beyond a reasonable doubt of each of the seven offenses of conviction; whether potential punishment was a factor in deciding petitioner's guilt; and whether the jury decided beyond a reasonable doubt that it was petitioner, and not his wife, who committed the offenses for which he was convicted. The jurors testified that the guilty verdicts were based upon the evidence presented at trial and the court's instructions on the law, and

were not the result of compromise in which jurors abandoned their beliefs about the defendant's guilt or innocence.  Id.

After considering the investigator's report, juror comments, and voir dire responses, the trial judge determined that there had been no juror misconduct, and no impermissible "compromise" in returning the guilty verdicts in petitioner's case.  The trial judge did not permit attorney-conducted voir dire aimed at further exploring the jurors' rationale in reaching their verdicts, and did not ask specific voir dire questions proposed by the petitioner.

The New Hampshire Supreme Court ruled, on direct appeal, that the trial court's factual determination of no juror misconduct was supported by the record.  The state supreme court also found the trial court's inquiry into the issue of potential juror misconduct to have been adequate, its post-conviction voir dire of the jurors to have been thorough, and its decision not to ask petitioner's proposed voir dire questions a valid exercise of discretion.

## Discussion

As construed by the magistrate judge, the petition for habeas corpus relief asserts two ripe federal claims:

> 1.  Petitioner's Sixth and Fourteenth Amendment rights to an impartial jury were violated when the jury improperly relied on "outside interference," rather than just the evidence presented, in rendering its verdicts ("Claim 1");
>
> 2.  Petitioner's Sixth and Fourteenth Amendment rights to due process and a fair trial by an impartial jury were violated when Petitioner was denied attorney-conducted, post-verdict voir dire of the jurors, and the trial court's voir dire was inadequate to protect Petitioner's rights ("Claim 2").

Respondent contends that both claims are unexhausted, were procedurally defaulted in the state courts, and fail on the merits. Petitioner does not address the question of procedural default, other than by arguing that his claims were properly exhausted.

A federal claim is properly exhausted for habeas review purposes if it was presented to the state courts in a fair and recognizable way, such that "a reasonable jurist would have been alerted to the existence of the federal question." Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007). Both of petitioner's federal claims were fairly and clearly presented to the state courts. His state supreme court brief directly asserted that the trial judge erred in denying his motion to set aside the guilty verdicts based upon substantial juror misconduct, in violation of his rights under the Sixth and Fourteenth Amendments to the

federal constitution. His brief also asserted that the trial judge's denial of attorney-conducted voir dire deprived him of his federal Sixth Amendment right to a fair trial (citing a state decision, State v. Weitzman, 121 N.H. 83 (1981), that involved a similar Sixth Amendment claim). With respect to both federal claims, then, petitioner has fully exhausted available state remedies.

Neither claim was procedurally defaulted. In resolving petitioner's case, the state supreme court did not rest its judgment on a state procedural bar.

**Standard of Review**

AEDPA and Petitioner's Burden

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited. A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And, a habeas petitioner seeking relief under that provision faces a substantial burden

insofar as "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> The most important point is that an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law . . . . Under §

> 2254(d)(1)'s "unreasonable application" clause, then, a
> federal habeas court may not issue the writ simply
> because that court concludes in its independent
> judgment that the relevant state-court decision applied
> clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11 (emphasis in original).  So, to prevail, the habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).  In fact, even when a state court has summarily rejected a petitioner's federal claim without any discussion at all, "it may be presumed that the state court adjudicated the claim on the

<u>merits</u> in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington</u>, 131 S. Ct. at 784-85. Under those circumstances - that is, when "a state court's decision is unaccompanied by an explanation," - the habeas petitioner still bears the burden of "showing there was no reasonable basis for the state court to deny relief." <u>Id</u>. at 784.

Only as to federal claims that were not adjudicated on the merits by the state court (and not dismissed by operation of a regularly-applied state procedural rule), may this court apply the more petitioner-friendly de novo standard of review. <u>See, e.g.</u>, <u>Clements v. Clarke</u>, 592 F.3d 45 52 (1st Cir. 2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA. When presented with such unadjudicated claims, the habeas court reviews them de novo.") (citation omitted).

### Merits

At bottom, petitioner takes issue with the state trial court's factual finding that his convictions were not the result of jury misconduct or impermissible compromise. But that factual finding, on this record, cannot be deemed "unreasonable" in light of the evidence developed in the state court proceeding. First,

that finding is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Second, it undoubtedly was correct, given the jurors' responses to the trial judge's voir dire questions, the statements obtained by the investigator, and the absence of any credible evidence tending to undermine the guilty verdicts.

The record discloses that the jury gave petitioner every possible benefit of doubt by refusing to find him guilty of any charge except those that it decided he, and he alone, committed. By acquitting defendant of every charge that the jury thought his wife might have been involved in, the jury fully preserved and protected his Sixth and Fourteenth Amendment rights to a fair trial. If the jury erred at all, it erred in defendant's favor, by not fully considering his individual guilt with respect to charges that also implicated his wife and, instead, choosing to acquit on all counts with respect to which she might also have played a role.

Petitioner says that the trial judge should have determined that "[t]he jury's verdict was based on its belief that some of the evidence implicated Mrs. Fandozzi [his wife] and some of it exculpated Mr. Fandozzi." Document no. 10, pages 3-4. It is a difficult argument to understand. In one sense, the argument is valid — the jury's multiple verdicts were seemingly based on some

speculation about petitioner's wife's involvement — but those verdicts were not inconsistent with the trial judge's factual findings. That is, the jury apparently <u>did</u> base its verdicts of <u>acquittal</u> on its perception that Mrs. Fandozzi might have been partially or entirely responsible for some of the charged assaults, and, therefore, the jury refused to convict petitioner of those charges, likely because, in its view, the state failed to prove petitioner's guilt beyond a reasonable doubt as to those charges. As the trial judge found, however, petitioner was <u>convicted</u> only of those assaults that the jury found, unanimously and beyond a reasonable doubt, that he alone committed. Petitioner does not challenge the verdicts of acquittal, of course, and the guilty verdicts were not affected by "evidence implicating Mrs. Fandozzi" that might tend to also exculpate petitioner. Nothing in this record tends to undermine the validity of the guilty verdicts returned by the jury.

   Not only is the state trial court's factual determination, as affirmed on direct appeal, supported by the record, and necessarily presumed in this proceeding to be correct, but even under a <u>de novo</u> review standard, it would be found to be correct. Petitioner has not identified any sound basis upon which to rest a legitimate claim of deprivation of a federal right and has not

shown the critical factual finding to be unreasonable in light of the evidence presented.

With regard to the individual voir dire claim, again petitioner has not shown that the state court's decision not to permit counsel-conducted voir dire, nor to put petitioner's proposed voir dire questions to the jury, as affirmed on direct appeal, was either contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).

Petitioner complains about the scope of the trial court's inquiry, invoking the Supreme Court's decision in Skilling (decided a few months after the state supreme court affirmed petitioner's convictions) as establishing a constitutional rule requiring something more than occurred in his case.  See Skilling v. United States, 130 S. Ct. 2896 (2010).  He also seems to argue that the state decision affirming his convictions constituted either an unreasonable application of, or was contrary to federal law as clearly established in Skilling.

But the Skilling decision recognizes that "no hard and fast formula" describes the voir dire process required to ensure jury impartiality.  130 S. Ct. at 2917.  Moreover, Skilling dealt with entirely different issues than those raised in this case.  Where

Skilling addressed issues concerning the empaneling of an unbiased jury under circumstances of widespread pretrial publicity, the petition here raises distinct issues regarding the adequacy of a post-verdict inquiry into alleged juror misconduct. Still, if Skilling established an applicable rule of federal law relevant here, it must be that "no hard and fast formula" yet describes the constitutionally required depth and breadth of an inquiry into jury impartiality. Certainly Skilling did not plainly, or even implicitly, announce a hard and fast federal rule requiring attorney-conducted voir dire, or a specific form of inquiry, as part of any reasonable post-verdict assessment of jury misconduct allegations.

More to the point, the state court's post-conviction proceeding was not only not inconsistent with any Supreme Court mandate, but was also entirely consistent with applicable federal law, which affords significant discretion to trial judges in determining the reasonable scope of inquiry into a juror misconduct claim:

> We need not decide here what procedures the trial judge should follow if he decides to make such an inquiry on remand. See United States v. Mikutowicz, 365 F.3d 65, 74 (1st Cir.2004) ("[A] district court maintains significant discretion in determining the type of investigation required by a juror misconduct claim."); Ortiz-Arrigoitia, 996 F.2d at 443 (noting that a trial judge is "not . . . shackled to a rigid and unyielding set [of][sic] rules and procedures" but rather is

> "vested with the discretion to fashion an appropriate and responsible procedure to determine whether misconduct actually occurred and whether it was prejudicial"); Mahoney v. Vondergritt, 938 F.2d at 1492 (upholding trial judge's decision not to go beyond a preliminary inquiry, held without counsel present, into post-verdict allegations that jurors did not confine their deliberations to evidence presented at trial).

United States v. Villar, 586 F.3d 76, 88 (1st Cir. 2009).

Here, as discussed earlier, the trial judge's inquiry was reasonable, focused, meaningful, and, wisely avoided straying into matters that were both within the province of the jury and irrelevant to the inquiry at hand.

The petitioner was not prejudiced in any way by the trial court's declining to permit counsel to voir dire the jury members, and further declining to ask his proffered voir dire questions. The proffered questions were overly general, and not adequately focused upon the critical issues. Essentially, petitioner's counsel wanted to inquire, or have the trial judge inquire, as to what specific evidence led to petitioner's convictions and what to his acquittals. That line of inquiry would not only have been unduly broad and intrusive, but unhelpful. The issue before the trial court concerned whether the guilty verdicts were the product of impermissible jury compromise, not whether each juror could justify each guilty verdict by reference to specific evidence. Petitioner's intended

voir dire was not properly framed, and the trial judge's inquiry was more than adequate to fully explore the critical issues:  Did the jury convict based only upon the evidence presented at trial; did it follow the court's instructions on the law; and did it find every essential element of each crime of which it convicted petitioner beyond a reasonable doubt?  Petitioners' wife's potential involvement in the child abuse underlying the criminal charges against petitioner was a matter that led not to petitioners' convictions, but to his acquittals.

The record supports the trial judge's findings of fact that no misconduct occurred, and petitioner has not shown that the state supreme court's decision upholding the procedure employed by the trial court was either contrary to, or constituted an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### Conclusion

The respondent's motion for summary judgment (document no. 9) is granted.  The amended petition for writ of habeas corpus relief (document no. 3) is denied.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**Certificate of Appealability**

Because Fandozzi has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Petitioner may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b). <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

    **SO ORDERED.**

                                            _____
                                            Steven J. McAuliffe
                                            Chief Judge

June 30, 2011

cc:   Mark L. Sisti, Esq.
       Elizabeth C. Woodcock, Esq.